| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| GBP Partners, Ltd., | § § | |
| Plaintiff, | § § | |
| versus | § § | Civil Action H-10-4228 |
| Maryland Casualty Company, | § § § | |
| Defendant. | § | |

# Opinion on Summary Judgment

1.  *Introduction.*

    A shopping center says that its policy covers a six-week abatement of tenants' rent as a necessary extra expense. The insurer will prevail.

2.  *Background.*

    In September of 2008, Hurricane Ike damaged the roof of Gulfbrook Plaza Shopping Center. It also caused the shopping center to lose electrical power for a while. The president of GBP Partners, Ltd. – the shopping center's owner – says that after the hurricane he offered to abate tenants' rent for six-weeks, spread over six months, so they would not leave. The shopping center presented Maryland Casualty Company – its insurer – a claim of $81,244.73 for abated rent for the six months from October of 2008 through March of 2009.

3.  *Extra Expense.*

    Maryland Casualty committed to pay necessary extra expenses incurred by Gulfbrook,
    (a)   During the period of restoration;
    (b)   To prevent shutting down Gulfbrook's operations;
    (c)   Because of damage to the shopping center; and
    (d)   Caused by a covered loss.

Maryland Casualty does not have to pay Gulfbrook because it has not shown that (a) an abatement is an expense, (b) it actually abated its tenants' rent, (c) a credit for six weeks' rent to 13 tenants was necessary because of damage to each of their spaces, or (d) the abatement prevented Gulfbrook from ceasing its business.

A.   *Expense.*

Incurring a cost under the policy requires an expense – the spending of capital to buy a good or service. Foregoing rent is not an expenditure of money; a trucker who charges less for a shipment has less revenue, but he has not incurred an expense. Gulfbrook decided to abate its tenants' rents, reducing its revenue to the extent that tenants may have actually paid a lower rent. It did not incur a cost.[1]

B.   *Abatement.*

Even if an abatement were an expense, Gulfbrook cannot show that it ever collected less rent from its tenants. It says that it offered an abatement shortly after Hurricane Ike and did not collect rent for the two weeks after the hurricane.

Hurricane Ike hit Houston on September 13; Gulfbrook would not have charged or collected rent from September 14 to September 28, because it collected rent in advance at the beginning of each month. It had already collected rent for September. On October 1, 2008, it charged its tenants the usual rent. Most of the tenants paid within a few days.

Gulfbrook did offer some tenants the abatement. In December of 2008, a new property manager for the center was asked by several tenants about rent discounts that had been promised. Offering the abatement is not the same as actually abating the rent.

Gulfbrook has only shown an entry from December 31, 2008, in its ledgers, showing a credit for six weeks' rent for many of its tenants. What Gulfbrook has not shown is that it ever told the tenants about the credit, charged less rent, collected less rent, or refunded the collected rent. It has admitted that no document exists that tells the tenants about the abatement; it has only presented the ledger.

---

[1] Tastee Treats, Inc., v. U.S. Fid. and Guar. Co., No. 5:07-cv-00338, 2011 U.S. Dist. LEXIS 61499, at *12 (S.D. W. Va. June 7, 2011).

Gulfbrook says it abated rent for 13 tenants: (1) AMCO Insurance, (2) Armstrong McCall, (3) Computers, Inc., (4) Ergo Rehab, (5) Gates Retail, (6) H&R Block, (7) Podiatry Associates, (8) Rent-A-Center, (9) Rent & Roll, (10) M. St. Rose & Dupre, (11) Star Loans of Texas, (12) Space City Tattoo, and (13) Discount Car Stereo.

Although AMCO Insurance's rent decreased from $3,152.30 to $2,902.30 in May of 2009, its rent in the seven months after Hurricane Ike remained the same, and it paid each month, never using a credit.

Armstrong McCall continued to be charged – and timely paid – the rent from October of 2008 until December of 2008. In December, its rent increased to $8,995.25; after a few months of timely paying the earlier rent – it may not have known of the increase – it brought itself current by May of 2009, and always paid. If it knew of the abatement, it did not use it.

Computers, Inc., Ergo Rehab, H&R Block, Podiatry Associates, Rent-A-Center, and Rent & Roll were charged the same rent after the hurricane as before and always paid on time.

Gates Retail and M. St. Rose & Dupre were behind on rent before Hurricane Ike and missed rent or paid partial rent during several months after; however, it is unclear whether their sporadic paying was because Gulfbrook told them that they could use the credit or because they continued to be unable to pay.

Star Loans of Texas paid the same rent after the hurricane as before until March of 2009, when its rent increased. As before, it paid the new rent on time; the credit sat in the ledger, unused. Space City Tattoo did the same, except that its rent increased in December of 2008.

The only tenant who may have used the credit is Discount Car Stereo; Gulfbrook continued to charge it the same rent, and Discount paid more or less in full and on time except for October of 2008, when it paid a little over one-half of its rent, and November of 2008, when it paid no rent.

A letter from the property manager to the adjuster in January of 2010 says that the credit was given to tenants, but the credit had yet to be "realized by all of the tenants." Gulfbrook has never shown that the tenants ever used the credit, much less during the period of October of 2008 to March of 2009 that Gulfbrook claims.

According to its ledger, Gulfbrook did not forego the rent that it now claims as expenses. Nine tenants paid full rent after the hurricane, including three that saw their rent increase, two could not pay their rent even before the hurricane, and one may have used the credit. Not only had the tenants not used the credit by January of 2010, but Gulfbrook has never shown that it told the tenants about the credit or that the tenants ever used it. It continued to charge and collect the rent that it now says it gave up.

C. *Necessary Because of Damage.*

Even if the abatement were an incurred expense, Gulfbrook could show that it was necessary of hurricane damage.

The policy requires the cost to be incurred because of damage to the shopping center. Gulfbrook does not know the extent and duration of the damage to each tenant's space, nor does it know when and for how long its tenants were closed; it guesses that some were closed for two weeks and others for longer. Tenants could have closed for a number of reasons; damage to tenants' homes and their customers' homes and businesses. The hurricane seriously impeded peoples' ability to shop in the weeks after.

Instead of tying the abatement to the circumstances of each tenant, Gulfbrook says that it gave 13 tenants the same, six-week abatement with no justification. The policy covers necessary extra expenses; the necessity of the abatement must be tied to damage from the hurricane, and Gulfbrook has not shown that all tenants needed an abatement because of damage from Hurricane Ike – much less the identical one.

D. *Necessary to Prevent Cessation.*

Gulfbrook must show that without the abatement, it would have had to completely cease business. It owns a shopping center; its business is offering commercial space for lease, just as a landlord offers apartments. Abating the rent was not necessary to preserve Gulfbrook's ability to offer leases.

If a flood destroys a bakery's ovens, the bakery must buy new ovens or it will have to close its doors. A restaurant with broken sewage pipes must rent portable toilets or it cannot serve food to patrons. A company whose office was damaged in a hurricane must rent a trailer

until repairs are finished.[2] An apartment building damaged by fire must install temporary locks for doors broken by firefighters.[3] These are examples of extra expenses: costs that are necessary to allow a business to keep its doors open despite damage. Those businesses would be unable to operate if they did not spend that money.

Gulfbrook says that without the abatement, most of the tenants would have left the shopping center, and it would have had to close the entire shopping center. Gulfbrook confuses the question; Maryland Casualty is not obliged to pay to keep the current tenants in the center. It must pay to keep Gulfbrook able to offer space.

Tenants' leaving is not the same as Gulfbrook's ceasing operations. Their departures would have hurt its finances, but it still would be able to run its business; it would have had vacancies – space to let to new tenants.

Gulfbrook could still operate, even without the abatement. Dixie Staffing received no abatement – actual or fantasy – and continued to pay its rent on time. AFDM Corporation was significantly behind on its rent and did not receive an abatement, but Gulfbrook continued to charge rent and collect whatever AFDM could pay.

Gulfbrook was not a bakery without an oven or an apartment building without a roof. The abatement did not prevent total cessation of its business of leasing commercial space.[4]

---

[2] Chalmette Retail Center, LLC, v. Lafayette Ins. Co., 2009-0217 (La. App. 4 Cir. 10/16/09); 21 So. 3d 485, 499.

[3] Doherty v. Nationwide Mutual Ins. Co., No. 05-6222, 2006 U.S. Dist. LEXIS 59936, at *6 (E.D. Pa. August 23, 2006).

[4] Royal Indemnity Ins. Co. v. Mikob Props., Inc., 940 F. Supp. 155, 159 (S.D. Tex. 1996); H&H Hospitality, LLC, v. Discover Specialty Ins. Co., No. H-10-1886, 2011 U.S. Dist. LEXIS 146055, at *13 (S.D. Tex. December 20, 2011).

4. *Conclusion.*

Maryland Casualty Company owes nothing more to GBP Partners, Ltd.

Gulfbrook has not shown that (a) abating rent is an expense, (b) tenants actually used the abatement, (c) a six-week abatement was necessary because of hurricane damage, or (d) the abatement prevented Gulfbrook from running a shopping center.

It will take nothing from Maryland Casualty Company for the abatement.

Signed on June 14, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge